**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PAULINE DANKO and MARK DANKO,** : | |
| **Individually and on behalf of all others** : | |
| **similarly situated,** : | |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 16-1235** |
| : | |
| **NATIONAL RAILROAD PASSENGER** : | |
| **CORPORATION,** : | |
| **Defendant.** : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                          **February 10, 2017**

In this case brought under the Employee Retirement Income Security Act ("ERISA"),[1]

Defendant National Railroad Passenger Corporation ("Amtrak") has filed a motion to dismiss the

Complaint, which Plaintiffs oppose.  For the following reasons, the motion will be granted in

part and denied in part.

## I.     FACTUAL ALLEGATIONS

Plaintiffs, husband and wife, filed this action on their own behalf and on behalf of a

proposed class of similarly-situated individuals.  The Complaint alleges that Mark Danko, an

Amtrak employee, and his wife Pauline receive health insurance coverage through Amtrak's

Group Health Plan.  Ms. Danko was injured in a motor vehicle accident in 2011, and received

benefits under the Plan.  Ms. Danko filed a lawsuit against the driver responsible for the accident

and settled for the limits available under the driver's policy, and asserted an uninsured or

underinsured motorist claim under her own automobile policy, which also settled.  Pursuant to

---

[1] 29 U.S.C. §§ 1001, *et seq.*

the terms of the Plan, Amtrak had a subrogation lien of $7,893.95 against the settlements so that it could be reimbursed for the medical benefits it had paid.

Amtrak sought the entire amount of the lien, while Ms. Danko's attorney took the position that the amount should be reduced by the proportionate amount of attorneys' fees expended to obtain the settlements, for a total of $5,262.63 in satisfaction of the lien. Ms. Danko's attorney sent a check for that amount, which was eventually cashed.  From March until June of 2015, Ms. Danko's attorney and a representative from Optum, Amtrak's subrogation administrator, exchanged emails with regard to whether or not Amtrak was entitled to the remaining $2,631.32, without a clear resolution.  The funds remained in the attorney's client security fund.   On November 15, 2015, Ms. Danko's attorney wrote to the administrator and to Amtrak, stating his understanding that any administrative prerequisites to suit had been exhausted, and did not receive a response.

Several months later, Plaintiff filed this suit, alleging that Defendant violated the subrogation terms of the Plan and seeking recovery of benefits due, declaratory and injunctive relief, interest, and attorneys' fees.  Upon receipt of the Complaint, Defendant's counsel sent a letter "to confirm that the Plan absolutely and irrevocably waives any and all right to further reimbursement relating to any benefit claims paid to Pauline Danko" in connection with the accident.[2]  Defendant requested that Plaintiffs dismiss the lawsuit, which Plaintiffs declined to do without payment of attorneys' fees and costs.[3]  Defendant then moved to dismiss, arguing that there is no justiciable case or controversy between the parties.

---

[2] Def. Ex. B.

[3] Def. Ex. C.

## II.    LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[4]  In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[5]  Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[6]  Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[7]  The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[8]

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may raise either a facial or a factual challenge. A facial challenge alleges a failure to plead jurisdictional prerequisites, whereas a factual challenge alleges that the prerequisites for jurisdiction do not in fact exist.[9] When faced with a factual challenge, the Court

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[5] *ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll*., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[6] *Twombly*, 550 U.S. at 555, 564.

[7] *Id.* at 570.

[8] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation mark omitted).

[9] *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008).

may "review evidence outside the pleadings" and make a factual determination as to whether the Court has jurisdiction.[10]

## III.    DISCUSSION

### A.    Standing

Amtrak argues that there is no case or controversy to give Plaintiffs standing to pursue the case.  To establish Article III standing, "a plaintiff must show (1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court."[11]  In the context of a motion to dismiss, "the injury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury."[12] If the complaint fails to satisfy these requirements, "a federal court does not have subject matter jurisdiction . . .[and] the claim[s] must be dismissed."[13]  In determining whether the allegations of the complaint confer standing upon the plaintiff, "courts apply the standard of reviewing a complaint pursuant to a 12(b)(6) motion to dismiss for failure to state a claim."[14]

---

[10] *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

[11] *NCAA v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

[12] *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (internal quotation marks, brackets, and citations omitted).

[13] *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

[14] *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

Defendant argues that Plaintiffs lack standing because they have not suffered any injury or loss.  The Court disagrees.  Plaintiffs allege that Amtrak's lien required that the funds at issue remain in the attorney's trust account, and that they therefore were deprived of the use of the money until after suit was filed.  This injury, although slight, is sufficient to confer standing.[15]  Amtrak has not shown that it relinquished its claim to the funds before suit was filed.[16]  Instead, the last communication from Optum to Ms. Danko's counsel stated in relevant part that:

> As outlined under the Plan's Right of Reimbursement, Amtrak will have a lien on the proceeds of any recovery.
>
> I'm assuming that you have distributed remaining settlement proceeds in this matter to your client.  An ERISA Plan can enforce an equitable lien against settlement funds, if they are in the member's possession.
>
> The health plan has a reimbursement right in that settlement and to those settlement funds.  The plan is legally permitted to assert such a right and that right is still enforceable.
>
> The Plan is still owed $2631.32 but in an effort to resolve this matter fairly and reasonably the Plan has agreed to accept half that, or $1306.66.[17]

As Amtrak asserted that at least part of the lien was "still owed," and Plaintiffs have alleged this deprived them of use of the disputed funds, Plaintiffs have met the threshold for standing.

### B.    Mootness

"While the doctrine of standing concerns whether a plaintiff is permitted to bring suit at the pleading stage, 'the central question of all mootness problems is whether changes in

---

[15]  *Cramer v. John Alden Life Ins. Co.*, 763 F. Supp. 2d 1196, 1208 (D. Mont. 2011) (holding that the plaintiff adequately alleged loss of use of benefits so as to confer standing).

[16]  *West v. Health Net of the NE*, 217 F.R.D. 163, 174-75 (D.N.J. 2003) (where evidence showed lien was withdrawn before suit was filed, Plaintiff lacked standing, but where lien was not abandoned until after suit was filed, Plaintiff had standing).

[17]  Def. Ex. H (email of June 8, 2015).

circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'"[18]  Defendant argues that Plaintiffs' claims are moot now that any subrogation claim has been released.  Plaintiffs do not dispute that the claims for declaratory and injunctive relief are now moot, but maintain that their claims for attorneys' fees, costs, and interest due under ERISA remain viable.  The Third Circuit has held that a justiciable controversy may remain in an ERISA case where attorneys' fees are still at issue.[19]  Defendant asserts that Plaintiffs have manufactured a controversy, that they "took absolutely no steps to assert any further rights" to the disputed funds after June 2015, and that the suit accomplished "nothing."[20]

But Plaintiffs allege that on November 15, 2015, their counsel wrote to Amtrak, stating his understanding that any administrative process had been exhausted, and "asking Amtrak to specify what if any additional administrative steps Ms. Danko must take in order to be able to pursue her rights against Amtrak in court."[21]  Therefore, Plaintiffs allege that they did further attempt to resolve the issue before filing suit, without response from Amtrak.  The Court cannot resolve questions as to proper exhaustion on the current record, nor can the Court rule as a matter of law at this time that the lawsuit accomplished nothing, when Amtrak did not formally renounce its claim to the funds until the Complaint was filed.  The claim for attorney's fees is not moot.

---

[18] *Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund*, 579 F. App'x 72, 75 (3d Cir. 2014) (quoting *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 39 (3d Cir. 1985) (internal citation omitted)).

[19] *Id.* at 75.  Whether or not Plaintiffs would be entitled to interest other than that earned in the attorney's trust account is not clear at this point.

[20] Def. Reply at 6-7 [Doc. No. 10].

[21] Compl. ¶ 32.

### C.      Failure to State a Claim

Amtrak argues that Plaintiffs cannot state a claim pursuant to § 502(a)(1)(B) of ERISA, which allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[22]  Defendant argues that Plaintiffs do not allege that they were denied benefits but only that Amtrak improperly asserted subrogation rights against the $ 2,631.32.  But in asserting that they are entitled to the funds, Plaintiffs seek to enforce their rights under the terms of the Plan. "Plan provisions—like the ones here—obligate participants and beneficiaries to notify the plan of legal process against third parties and to give the plan a right of subrogation."[23]  Thus, Plaintiffs filed suit to clarify that Amtrak has no subrogation right to the disputed funds.[24]

Defendant also argues that because Plaintiffs seek to recover benefits under § 502(a)(1)(B), they cannot proceed under § 502(a)(3), which allows beneficiaries to seek "appropriate equitable relief" that cannot be addressed adequately by other provisions of ERISA.[25]  This argument is premature as Plaintiffs may plead in the alternative, and the merits are better addressed on a more developed record.[26]  Defendant may raise this argument again on summary judgment.

---

[22] 29 U.S.C. § 1132(a)(1)(B).

[23] *Montanile v. Bd. of Trustees of Nat'l Elevator Indus.*, 136 S. Ct. 651, 662 (2016).

[24] The Court assumes that Amtrak does not wish to argue that funds subject to the right of subrogation should not be maintained separately until the lien is resolved; otherwise, Amtrak could find itself unable to enforce equitable liens in the event the funds are dissipated.  *Id.* at 662.

[25] 29 U.S.C. § 1132(a)(3).

[26] *Shah v. Horizon Blue Cross Blue Shield of N.J.*, No. 15-8590, 2016 WL 4499551, at * 10 (D.N.J. Aug. 25, 2016).

7

Finally, Defendant argues that Plaintiffs failed to exhaust administrative remedies, as required under ERISA.[27]  This argument is also premature on the current record, as the Court cannot determine what process was required and the effect of counsel's communication of November 15, 2015, with regard to exhaustion.

## IV.    CONCLUSION

For the reasons explained above, Defendant's motion to dismiss will be granted in part, as Amtrak has renounced any lien as to the $2,631.32, rendering relief as to that claim moot. The motion is otherwise denied.  An order will be entered.

---

[27] *See Mallon v. Trover Solutions, Inc.*, 613 F. App'x 142, 143 (3d Cir. 2015).